RIVERBANK LABORATORIES, a corporation, Plaintiff-Appellee,

v.

HARDWOOD PRODUCTS CORPORATION, a corporation, Defendant-Appellant.

No. 11213.

United States Court of Appeals,
Seventh Circuit.

March 18, 1955.

Rehearing Denied April 12, 1955.

**466**

David A. Fox, Milwaukee, Wis., Gerrit P. Groen, Chicago, Ill., Wilkinson, Huxley, Byron, Hume, Chicago, Ill., for defendant-appellant.

Jack H. Oppenheim, Chicago, Ill., William J. Friedman, Maurice Rosenfield, Chicago, Ill., for plaintiff-appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

In this action plaintiff seeks an injunction restraining defendant from using the word "Riverbank". At the oral argument before this Court, plaintiff's counsel designated the action as one for unfair competition although such terminology does not appear anywhere in the complaint. Jurisdiction is based upon diversity of citizenship. Defendant moved to dismiss the action because of lack of proper venue; plaintiff moved for a temporary injunction. The District Court denied the motion to dismiss but granted the motion for a temporary injunction. Defendant appeals from the interlocutory order granting the temporary injunction.

The order denying the motion to dismiss the action because of improper venue is interlocutory and would not be appealable if considered alone. Bowles v. Culhane, 7 Cir., 151 F.2d 504, 505. However, this court has jurisdiction of the appeal from the preliminary injunction, Title 28 U.S.C. § 1292. In reviewing the issues raised on that appeal we may inquire both as to the jurisdiction of the District Court and the adequacy of the complaint, for no preliminary injunction may stand if the complaint itself cannot stand. Deckert v. Independence Shares Corporation, 311 U.S. 282,

61 S.Ct. 229, 85 L.Ed. 189; Pang-Tsu Mow v. Republic of China, 91 U.S.App. D.C. 324, 201 F.2d 195, 198; American Chemical Paint Co. v. Dow Chemical Co., 6 Cir., 161 F.2d 956, 958; In re Chicago Rapid Transit Co., 7 Cir., 200 F.2d 341, 343, 33 A.L.R.2d 1360.

Defendant's motion to dismiss because of improper venue was based upon its claim that it is a Wisconsin corporation not licensed to do business in Illinois, and that it did no business in Illinois other than the solicitation of interstate business. Defendant relies principally upon the decision of this Court in Canvas Fabricators, Inc., v. William E. Hooper & Sons Co., 7 Cir., 199 F.2d 485. We approved and followed the Canvas Fabricators case in Roberts v. Evans Case Co., 7 Cir., 218 F.2d 893.

The relevant facts on the question of venue are as follows: Defendant, a Wisconsin corporation, has its main office and principal place of business at Neenah, Wisconsin, and is not licensed to do business in Illinois, and has not authorized any agent to accept service of process there. For many years defendant has maintained an office in Chicago which, it claims, is merely a sales office. Charles D. Heidemann has been in charge of the Chicago office for many years and service of process in this suit was made upon him. At least the principal part of his duties was soliciting orders for goods manufactured by defendant in Wisconsin. Such orders were transmitted to Neenah, Wisconsin, for acceptance or rejection. Defendant's corporate name was painted on the door of its Chicago office, and its name also appeared in the directory in the lobby of the building. Its name was listed in the Chicago directory. Defendant did not maintain a stock of goods in Illinois, nor did it have a bank account in that state.

Many of the facts in the case at bar, bearing on the question of venue, are similar to the facts in Canvas Fabricators, Inc., v. William E. Hooper & Sons Co., supra, hereinafter referred to as

Canvas Fabricators, and Roberts v. Evans Case Co., supra, hereinafter called Roberts. In each of these cases the defendant was a nonresident corporation which had maintained an office in Chicago for many years. In each case defendant's name appeared upon the office door and was listed in the Chicago directory. In those cases, as in the case at bar, no contracts were entered into in Illinois, but all orders were sent to the home office of defendant for acceptance or rejection. In Canvas Fabricators, as in the case at bar, the defendant's sales representative used stationery bearing the Company's name and the address of the Chicago office. In Roberts the Chicago office had been maintained for twenty years in charge of the same agent whose territory covered Illinois and four nearby states. In Canvas Fabricators we said, 199 F.2d at page 487: "It is true that in the instant case defendant maintained rather elaborate facilities in connection with its activity in Illinois, but, after all, the instrumentalities provided were only in aid of its objective, that is, the solicitation of business within the State, * * *."

Additional factors in those cases not present in the case at bar might be noted. In Canvas Fabricators the defendant maintained a bank account in Chicago in which two of plaintiff's checks, given in payment of merchandise, had been deposited. In Roberts, defendant had filed a personal property schedule with the Assessor of Cook County, Illinois "for merchandise, goods on hand and in process", amounting to $1,131 in 1952 and $885 in 1953. However, this Court considered this item to cover only samples and catalogues.

■■ In Canvas Fabricators and in Roberts we pointed out that in diversity cases the law of Illinois must control and that decisions by the Illinois Supreme Court such as G. W. Bull & Co. v. Boston & Maine R. R., 344 Ill. 11, 175 N.E. 837, and Booz v. Texas & Pacific Ry. Co., 250 Ill. 376, 95 N.E. 460, establish the rule that a defendant is not subject to process in Illinois if it was not engaged in business in that state in any way other than the solicitation of orders to be accepted or rejected elsewhere.

■ Plaintiff insists, however, that in the case at bar there are additional facts which demonstrate that defendant was doing business in Illinois. Plaintiff says that by reason of its contract with defendant, royalty payments were paid to plaintiff as licensor in Illinois in the sum of $3,000 a month, and that merchandise shipped into Illinois exceeded $100,000 annually. However, we think it makes no difference under Illinois law whether the amount of business resulting from orders taken in Illinois and accepted outside that state were small or large in amount.

Plaintiff points out as important factors that defendant's business in sound insulating doors centered in and about Chicago; that an important part of Mr. Heidemann's duties was to consult with architectural and engineering firms in Chicago as to the technical requirements of particular jobs specifying sound insulating doors; that he would dictate letters from the Chicago office to architects and engineers, embodying his ideas and suggestions as to the manner of installing doors manufactured by the defendant; at times he developed his suggestions into drawings which he had blue-printed in Chicago; also he, occasionally, investigated complaints about doors in the Chicago area and made suggestions for remedying any faulty condition discovered.

It seems self-evident that the solicitation of orders for cigarette lighters or other small commercial products would entail an entirely different technique than endeavoring to obtain orders for a large or complicated product such as a sound insulating door which is usually installed in factories or other large establishments. Conferences with engineers and archi-

tects for the purpose of having them include sound insulating doors in the plans and specifications, should properly be listed as a part of a salesman's activities. Surely, it would avail a salesman of sound insulating doors little were he to wait until construction of a project was commenced. He might then very well discover that there was no place to hang his type of door.

Plaintiff also urges that defendant was doing business in Illinois because the partnership of which plaintiff was a member had contracted with defendant to supply a minor part of the door known as "bottom closers", which cost about $3.60 each. Plaintiff's partnership subcontracted this item and the closers were, in fact, manufactured in Illinois. Usually and customarily the closers were shipped in stock lots to the defendant at Neenah, Wisconsin, but upon occasion, instructions were issued by the defendant, to ship the closers direct to a customer. The cost of closers was billed monthly to defendant at Neenah, Wisconsin, for all closers shipped in that month. We do not think that the carrying out of the contract for the manufacture of bottom closers resulted in the defendant doing business in Illinois.

Nor do we think the fact that Mr. Heidemann, on occasions, investigated complaints would cause the defendant to be doing business in Illinois. In such instances he merely reported his findings to the home office. He made no repairs, nor did he replace merchandise or refund money. He had no authority to adjust any complaint.

■ Applying the law of Illinois as interpreted by this Court in the Canvas Fabricators and Roberts cases we hold that the defendant was not doing business in Illinois and, therefore, was not present in that State when this action was commenced. It follows that the District Court erred in denying defendant's motion to dismiss for lack of proper venue.

Reversed.